STATE OF FLORIDA, EX REL. FERDINAND BAYER, VS. J. C. GARDNER, COUNTY JUDGE OF ALACHUA COUNTY ET AL., RESPONDENTS.—PROHIBITION.

Section 11 of Article VI of the Constitution, as amended in 1875, provides that the County Judge "may also have and exercise jurisdiction of such proceedings relating to the forcible entry or unlawful detention of lands and tenements, subject to the appellate jurisdiction of the Circuit Court, as may be provided by law:" *Held*, That future legislation was not necessary to make such provision operative, but its purpose and effect were that the County Judges should exercise jurisdiction of such proceedings applicable to the named subjects, as either the then existing, or future legislation might provide, and that the proceedings provided by the act of 1868 (Chapter 1630) may be enforced before such Judges.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*F. E. Hughes* for Relator.

*Ashby, Scott & Thrasher* for Respondents.

MR. JUSTICE RANEY delivered the opinion of the court:

The question involved in this record is, whether under the Constitution and statutes of this State, as they now exist, a County Judge has power to try a case of unlawful detainer of land. It is claimed by the relator that further legislation is necessary to this end.

The Constitution of 1868 gave the Circuit Courts original jurisdiction " of the action of forcible entry and unlawful detainer," and provided that " the County Courts may have coextensive jurisdiction with the Circuit Courts in

cases of forcible entry and unlawful detention of real estate, subject to appeal to the Circuit Court." Secs. 8 and 11, Art. VI. The first Legislature held under this Constitution passed "an act concerning forcible entry and detainer," (chapter 1630, approved August 14th, 1868,) which provides for a recovery against an entry not given by law, or with strong hand or multitude of people even where entry is given by law, and for a recovery in case of a peaceable and lawful entry, when the person so entering shall, after the expiration of his right of possession, continue to hold the land against the consent of the party entitled to the possession. The fifth section provides that the party so turned out of possession, or so held out of possession, may exhibit his complaint before the Judge of the County Court or before the Judge of the Circuit Court of the Circuit, and the act in this and subsequent sections provides the form of a complaint and summons, and regulates the mode of trial and all the proceedings, including an appeal.

In 1875 the above sections of Article 6 of the Constitution were amended, the amendatory sections taking the place entirely of the original, in accordance with the form prescribed and of use in this State in making express amendments of sections of a statute. Amendatory section eight retains the language of its original on the subject of forcible entry and unlawful detainer. It is unnecessary to state the provisions of this section on other subjects. Amendatory section 11 is as follows: "The County Court shall have power to take probate of wills, to grant letters testamentary, and of administration, and of guardianship, to attend the settlement of the estates of decedents and of minors, and to discharge the duties usually pertaining to courts of probate, subject to the direction and supervision of the appellate and equity jurisdictions of the Circuit Court, as may be provided by law, and the County Judges

shall have and exercise the civil and criminal jurisdiction of Justices of the Peace. They may also have jurisdiction of such proceedings relating to the forcible entry or unlawful detention of lands and tenements, subject to the appellate jurisdiction of the Circuit Oourt, as may be provided by law. ' Prior to this amendment, the County Court *under the original section 11* was possessed of jurisdiction, not only in cases of forcible entry and unlawful detention of real estate, coextensive with and subject to appeal to the Circuit Court, and " of full surrogate or probate powers subject to appeal," subjects which are covered by the amendatory section, but it had also jurisdiction " of all misdemeanors, and all civil cases where the amount in controversy " did not exceed three hundred dollars, such jurisdiction being final where the amount did not exceed one hundred dollars, its civil jurisdiction not including however questions of the *title* or *boundary* of real estate. It was also provided by the original section that there should be a regular trial term of the County Court six times in each year.

Comparing the original and amendatory sections 6 and considering therewith amendatory section 15, of the same Article, which gives Justices of the Peace jurisdiction in all actions at law in cases in which the amount or value involved does not exceed one hundred dollars, and provides that " in criminal cases their powers shall be fixed by law," we see that the purposes of these amendments was to deprive the County Court and Judge (save in the exercise of probate and surrogate powers and in actions of forcible entry and unlawful detainer) of the important and fixed constitutional jurisdiction the court had previously exercised, and to confine them in all other civil, and in all criminal matters to the jurisdiction of Justices of the Peace.

It is well known that the County Courts in the exercise of their criminal and ordinary common law civil jurisdic-

tion, as organized under the original Constitution of 1868, were found illy suited to the condition of our people. They proved not only to be sources of grievous expense, with their attendant juries and witnesses, but also unsatisfactory administrators of justice; and the amendments adopted in 1875, in so far as they concerned such court, were proposed and recommended by the second and third Legistures elected under that instrument, and in response to a very urgent and unanimous sentiment of the tax paying people. Experience had proved that the enlarged powers which had been collected in this court should be distributed, and the result of the amendments was that the County Court now has only such judicial power as the Judge of Probate had prior to the Constitution of 1868, and the County Judge is the judge of such court, and as such has power to try cases of forcible entry and unlawful detainer, subject to appeal, a power which, prior to such Constitution, two or three Justices of the Peace could exercise, and he is also a Justice of the Peace of the county for which he is appointed. All jurisdiction taken from him by the amendment, except such as a Justice of the Peace may exercise or be given, is put in the Circuit Court. There is nothing in the amendments referred to, nor in the history of the times leading to them, which supports the idea that any dissatisfaction with the general laws to be administered occasioned their proposal or adoption. The purpose was to provide suitable tribunals for the enforcement of the laws, as the latter existed or might be made or altered from time to time. At the time of the adoption of these amendments there existed, as we have seen, a statute regulating actions of unlawful detainer and their trial before the very same officers, in whom the power of trial is continued. This statute, it may be remarked, is, in so far as the wrongs it re-

2

dresses, substantially a re-enactment of the act of 1828, in force upon the same subject at the adoption of the Constitution of 1868, and to be found in Thompson's Digest. When the original section 3, Constitution of 1868, gave the Circuit Courts original jurisdiction of the action of " forcible entry and unlawful detainer," it meant such actions as they were then constituted under the statute, and might, within constitutional bounds, be created by future legislation, and the same was the meaning of the original section 11 as to the County Courts; and the same likewise was the meaning of the amendatory section 8 as to the Circuit Courts; and when the amendatory section 11 said, " they may also have jurisdiction of such proceedings relating to the forcible entry or unlawful detention of lands and tenements, subject to the appellate jurisdiction of the Circuit Court, as may be provided by law," it meant that such proceedings relating to the forcible entry or unlawful detention of lands and tenements as the existing or future statutes might provide for, should be within the jurisdiction of County Judges, subject, however, to the appeal indicated. The language used—*may be provided by law*—can be reasonably construed to cover both present and future legislation. The insertion of the word *hereafter* is necessary to confine it to the latter. The same language is used before in the same section, and who has ever doubted that the general laws regulating the probate of wills, administration, &c., in force at the date of adoption of this amendment were as much within it as any subsequent legislation. There is nothing in the nature of the statute of 1868 inconsistent with the purpose of the amendment of 1875, and such being the fact, and there being nothing in the amendment indicating an express intent to repeal the act, we see no reason why it does not remain in full force.

We find nothing in the authority cited by counsel for relator fatal to our conclusions. In the case of the State vs. City of Newark, 10 Vroom, 380, where the amendment to the Constitution of New Jersey provided that " property shall be assessed for taxes under general laws, and by uniform rules, according to its true value," it was held to execute itself, and to require no legislation to enforce it, and that it went into effect immediately upon its adoption, and operated as an abrogation of all special laws for assessing property for taxes, and that in the assessment of taxes thereafter property was required to be assessed under the *general law then in force*, which in all respects conformed to the constitutional requirement as to the valuation of property for the purposes of taxation. The doctrine of the decision is that the effect of a constitutional amendment on existing laws is a question of intent, and that the general laws for the assessment of property for taxes then existing, not being inconsistent with the constitutional amendment, continued to be applicable to taxation after the amendment went into effect, and no new legislation was indispensable to put it in operation, and that the amendment itself operated as a repeal of the special or local laws upon the same subject, and which it was the purpose of the amendment to get rid of. As stated above, we do not think the purpose of the amendments of 1875 was to get rid of the statute as to forcible entry and unlawful detainer.

Putting relator's case in its strongest light, more cannot be said for it than that there is, at least, a doubt created by the language used in amendatory section eleven, that it means the County Judges should not exercise the jurisdiction until further legislation should be had upon the subject. In cases of such doubt not only can resort be had to the object sought to be accomplished by the amendment,

as referred to above, (Cooley's Con. Lim., m. p. 65,) but contemporaneous and practical construction which has been acquiesced in for a considerable period is of force. "Indeed" says Judge Cooley, "where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the Constitution, and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightfully interprets the intention, and when this has been given by officers in discharge of their official duty, and rights have accrued in reliance upon it which would be divested by a decision that the construction was erroneous, the argument *ab inconvenienti* is sometimes allowed to have very great weight." Ibid 67–71.

For over ten years it has been the common practice of the County Judges to entertain this jurisdiction. Their right to do so has never been questioned before in this court, nor anywhere that we are informed; not only is this so, but in the act of 1885, referred to above, we find it enacted "that in the trial of cases of forcible entry and unlawful detainer before the *County Court* or *County Judge*, the same shall be tried by six legal jurors, who shall be freeholders," &c.; thus showing that a similar understanding was had by the State Legislature and by the Governor who approved the statute.

Assuming that additional legislation had been necessary before the County Judges could have exercised the jurisdiction, we are still unable to see that the omission of the words " coextensive jurisdiction" from the amendatory section 11 shows an intent that in no event their jurisdiction in such cases should be equal to that of the Circuit Courts subject to the appellate power of the Circuit Courts. We fail to see why the Legislature could not give the

County Judges original jurisdiction of the same " proceedings relating to the forcible entry and unlawful detèntion of lands and tenements." Where is the limitation upon the proceedings that " may be provided " by the Legislature in this matter, outside the well known character of forcible entry and unlawful detainer? It is not expressed, nor do we see anything from which it can be inferred. Had the framers of this amendment intended to put such a limitation upon the Legislature, they would have defined it. We see no evidence of any such purpose having been in their minds. Such limitations must be expressed or clearly implied. They cannot be presumed, for the presumptions are all in favor of Legislative power.

The demurrer is sustained, and the rule discharged. The costs will be taxed against the relator.